UNITED STATES DISTRICT COURT
NORTHERN DISTRICT TEXAS
DALLAS DIVISION

| | |
|---|---|
| BILL RAINS, Individually and on Behalf of All Others Similarly Situated, | ) No. <br> ) <br> ) |
| Plaintiff, | ) CLASS ACTION COMPLAINT FOR <br> ) VIOLATIONS OF THE FEDERAL <br> ) SECURITIES LAWS |
| v. | ) <br> ) |
| ZALE CORPORATION, NEAL L. GOLDBERG, RODNEY CARTER, MARY E. BURTON, and CYNTHIA T. GORDON, | ) <br> ) <br> ) <br> ) |
| Defendants. | ) <br> ) JURY TRIAL DEMAND |

Plaintiff, Bill Rains, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Zale Corporation ("Zale" or the "Company"), with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Zale; and (c) review of other publicly available information concerning Zale.

## NATURE OF THE ACTION AND OVERVIEW

1.     This is a federal class action on behalf of purchasers of Zale's securities between November 16, 2006 and October 29, 2009, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.     Zale is a specialty retailer of fine jewelry in North America.   The Company's

portfolio of brands includes Zales Jewelers, Zales Outlet, Gordon's Jewelers, Peoples Jewellers and Mappins Jewellers of Canada, and Piercing Pagoda.

3.      On October 29, 2009,  the Company filed its Annual Report with the United States Securities and Exchange Commission (the "SEC") for the fiscal year ended July 31, 2009, containing restated financial information for fiscal 2008, 2009, and prior periods, to reflect certain accounting adjustments for advertising costs, intercompany accounts receivable, depository bank accounts, federal income taxes, and personal property taxes.  Therein, Zale further disclosed that the SEC is investigating the accounting issues that led the Company to restate its earnings for 2008 and 2009.

4.      On this news, shares of Zale declined $1.66 per share, nearly 26%, to close on October 30, 2009, at $4.73 per share, on unusually heavy volume.

5.      Throughout the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose: (1) that the Company improperly recorded certain advertising costs as prepaid advertising rather than recording the cost as an expense; (2) that the Company improperly accounted for intercompany accounts receivable associated with its wholly owned insurance subsidiaries; (3) that, as a result, the Company's financial results were overstated during the Class Period; (4) that the Company's financial results were not prepared in accordance with Generally Accepted Accounting Principles ("GAAP"); (5) that the Company lacked adequate internal and financial controls; and (6) that, as a result of the above, the Company's financial statements were materially false and misleading at all relevant times.

6.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act (15 U.S.C. §78aa).

9.      Venue is proper in this Judicial District pursuant to §28 U.S.C. §1391(b),  §27 of the Exchange Act (15 U.S.C. §78aa(c)).

10.      Venue is proper in this Judicial District pursuant to 28 U.S.C. §1391(b) and Section 27 of the Exchange Act (15 U.S.C. §78aa(c)).  Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the preparation and dissemination of materially false and/or misleading information, occurred in substantial part in this District. Additionally, Zale maintains its principal executive offices within this Judicial District.

11.      In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

12.     Plaintiff, Bill Rains, as set forth in the accompanying certification, incorporated by reference herein, purchased Zale common stock during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

13.     Defendant Zale is a Delaware corporation with its principal executive offices located at 901 W. Walnut Hill Lane, Irving, Texas, 75038.

14.     Defendant Neal L. Goldberg ("Goldberg") was, at all relevant times, Chief Executive Officer ("CEO") and a director of Zale since December 20, 2007 and was, at all relevant times, also President of Zale between December 20, 2007 and August 20, 2008.

15.     Defendant Rodney Carter ("Carter") was, at all relevant times, Executive Vice President, Chief Administrative Officer, and Chief Financial Officer ("CFO") of Zale until January 20, 2009.

16.     Defendant Mary E. Burton ("Burton") was, at all relevant times, CEO, President, and a director of Zale until December 19, 2007.

17.     Defendant Cynthia T. Gordon ("Gordon") was, at all relevant times, Senior Vice President and Controller of Zale until June 30, 2009, and was, at all relevant times, Interim CFO of Zale between January 20, 2009 and June 15, 2009.

18.     Defendants Goldberg, Carter, Burton, and Gordon are collectively referred to hereinafter as the "Individual Defendants." The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Zale's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market. Each defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and

had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, each of these defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

## SUBSTANTIVE ALLEGATIONS

### Background

19.     Zale is a specialty retailer of fine jewelry in North America. The Company's portfolio of brands includes Zales Jewelers, Zales Outlet, Gordon's Jewelers, Peoples Jewellers and Mappins Jewellers of Canada, and Piercing Pagoda.

### Materially False and Misleading
### Statements Issued During the Class Period

20.     The Class Period begins on November 16, 2006. On this day, Zale issued a press release entitled, "Zale Corporation Announces First Quarter Earnings Results." Therein, the Company, in relevant part, stated:

> DALLAS--(BUSINESS WIRE)--Nov. 16, 2006--Zale Corporation (NYSE: ZLC), North America's largest specialty retailer of fine jewelry, today announced a net loss, of $26.4 million, or $0.55 per share, for the Company's first quarter ended October 31, 2006. The Company's earnings guidance excluded the impact of derivative accounting on gold and silver contracts under SFAS 133 which resulted in an after-tax $5.4 million loss, or $0.11 per share. This loss would have been $0.01 per share under hedge accounting treatment within SFAS 133. Excluding the net impact of derivative versus hedge accounting treatment, the Company reported a net loss of $21.6 million, or $0.45 per share. For the same period last year, the Company reported a net loss of $23.7 million, or $0.47 per share. Excluding the non-cash impairment charge of $5.3 million, or $0.10 per share from the closure of Bailey Banks & Biddle locations in last year's first quarter, the Company reported a net loss

5

of $18.4 million, or $0.36 per share.

Total revenues for the quarter ended October 31, 2006 were $432.5 million compared to $427.6 million last year, an increase of 1.1%. Comparable store sales for the first quarter increased 0.4%.

"Earnings performance met expectations for the quarter and comparable store sales were consistent with plan as we moved through clearance and increased transactions were offset by a lower average ticket," commented Betsy Burton, President and Chief Executive Officer.

Ms. Burton continued, "We executed our plan for the quarter which included resetting all Zales stores with new and expanded assortments, clearing as much non-program merchandise as possible and making investments in payroll and inventory to prepare for a successful Holiday."

21.    On December 8, 2006, Zale filed its Quarterly Report with the SEC on Form 10-Q for the 2007 fiscal first quarter.  The Company's Form 10-Q was signed by Defendant Gordon and reaffirmed the Company's financial results previously announced on November 16, 2006.  The Company's Form 10-Q also contained Sarbanes-Oxley required certifications, signed by Defendants Burton and Carter, who certified:

1.    I have reviewed this Quarterly Report on Form 10-Q of Zale Corporation;

2.    Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3.    Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4.    The registrant's other certifying officer(s) and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)), and internal control over financial reporting (as defined in Exchange Act Rules 13a–15(f) and 15d–15(f)) for the registrant and have:

6

a)    Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

b)    Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

c)    Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation;

d)    Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5.    The registrant's other certifying officer(s) and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

a)    All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

b)    Any fraud, whether or not material, that involves

management    or    other

employees    who    have    a

significant    role    in    the

registrant's    internal    control

over financial reporting.

7

22.    On February 21, 2007, Zale issued a press release entitled, "Zale Corporation

Announces Second Quarter Earnings Results."  Therein, the Company, in relevant part, stated:

DALLAS--(BUSINESS WIRE)--Feb. 21, 2007--Zale Corporation (NYSE:ZLC), a leading specialty retailer of fine jewelry in North America, today announced adjusted net earnings of $94.8 million or $1.94 per diluted share for the Company's second quarter ended January 31, 2007, after adjustments for derivative accounting under SFAS 133 and a change in methodology in revenue recognition for lifetime jewelry protection plans sold during the quarter. Including these adjustments, the Company reported net earnings under U.S. GAAP of $88.1 million or $1.80 per diluted share. The impact of accounting for gold and silver contracts under SFAS 133 increased net earnings by $2.5 million or $0.05 per share. In addition, during the second quarter the Company expanded its jewelry protection plan sold to customers to cover the lifetime of the product rather than the two year period previously covered. As a result of the change in the underlying commitment, the Company changed from a percentage-of-cost-expected-to-be-incurred to a straight-line method of revenue recognition for new sales. The impact of the change was a reduction in revenue recognized of $14.9 million or $0.19 per diluted share compared to the revenue that would have been recognized by applying the percentages historically utilized to a comparable portion of the received amount. In addition to the $14.9 million, the Company generated an additional $8.8 million in sales of the product for a total of $23.7 million in additional deferred revenue in the second quarter. This revenue recognition change has no impact on cash flow or comparable store sales for the Company.

For the same period last year, the Company reported net earnings of $96.7 million, or $1.96 per diluted share excluding special items. In last year's second quarter, the Company recorded, on an after-tax basis, (1) a charge of $15.1 million or $0.30 per diluted share related to the Bailey Banks & Biddle store closings, (2) a tax benefit of $11.5 million or $0.23 per diluted share from repatriated Canadian earnings under the American Jobs Creation Act and (3) a $5.3 million, or $0.11 per diluted share, severance charge in conjunction with an executive management change. Including these items, the Company reported second quarter earnings last year of $87.8 million or $1.78 per diluted share.

Total revenues for the quarter ended January 31, 2007 were $1.004 billion compared to $979 million last year, an increase of 2.6%. Last year's total revenues exclude the results of the Bailey Banks & Biddle stores that were closed during the second fiscal quarter of 2006. Including these store closures, total revenues this year increased 1.1% compared to last year's total revenues of $994 million. Comparable store sales for the second quarter increased 1.4%.

Year-to-date total revenues, excluding the store closures, increased 2.9% to $1.437 billion, compared to $1.397 billion for the same period last year. Including the store

closures, year-to-date total revenues increased 1.1% compared to $1.421 billion for the same period last year. Year-to-date comparable store sales, which exclude the store closures, increased 1.1%. Year-to-date net earnings totaled $61.7 million or $1.26 per diluted share. Included in these earnings are the adjustments for derivative accounting under SFAS 133 and change in methodology in revenue recognition for jewelry protection plans sold during the quarter. The net impact of derivative versus hedge accounting treatment was a $2.3 million loss, or $0.05 per diluted share and a reduction in revenue recognized of $14.9 million or $0.19 per diluted share. Excluding these items, year-to-date net earnings were $73.2 million, or $1.50 per diluted share. For the same period last year, net earnings were $64.2 million, or $1.28 per diluted share. These prior year earnings include, on an after-tax basis, (1) costs related to the closing of Bailey Banks & Biddle stores of $20.3 million, or $0.40 per diluted share, (2) a tax benefit from repatriated Canadian earnings of $11.5 million, or $0.23 per diluted share, and (3) severance payments of $5.3 million, or $0.11 per diluted share. Excluding these items, the Company reported year-to-date net earnings of $78.3 million last year, or $ 1.56 per diluted share.

"While not reaching our original expectations for the quarter, I'm pleased with the progress we've made," commented Betsy Burton, Chief Executive Officer. "At the Zales brand, we had our first comparable store increase in three years and our first increase in operating earnings in four years. Customers reacted favorably to our expanded assortment in our core diamond fashion and bridal categories as well as our marketing repositioning." Ms. Burton continued, "While we gave back margins due to aggressive pricing and increased promotional activity at Holiday, in January we changed our focus to maximizing gross profit dollars. In the second half, we will continue maximizing gross profit dollars as well as focus on expense reduction, particularly those investments in payroll and marketing that did not generate sufficient sales gains to justify. We are focused on driving shareholder value over the long-term and believe the Company is being positioned to achieve that goal."

23.     On March 9, 2007, Zale filed its Quarterly Report with the SEC on Form 10-Q for the 2007 fiscal second quarter. The Company's Form 10-Q was signed by Defendant Gordon and

reaffirmed the Company's financial results previously announced on February 21, 2007.  The

Company's Form 10-Q also contained Sarbanes-Oxley required certifications, signed by Defendants

Burton and Carter, substantially similar to the certifications contained in ¶21, *supra*.

24.    On May 22, 2007, Zale issued a press release entitled, "Zale Corporation Announces

Third Quarter Earnings Results."  Therein, the Company, in relevant part, stated:

> DALLAS--(BUSINESS WIRE)--May 22, 2007--Zale Corporation (NYSE: ZLC), a
> leading specialty retailer of fine jewelry in North America, today announced a net
> loss of $3.1 million or $0.06 per share for the Company's third quarter ended April
> 30, 2007. This loss includes, on an after-tax basis, a reduction of $6.9 million, or
> $0.14 per share due to the decline in revenue recognized from the change to a
> lifetime jewelry protection plan and a benefit of $1.6 million, or $0.03 per share for
> the net impact of derivative versus hedge accounting on its gold and silver contracts.
> Excluding these items, the Company reported earnings of $2.2 million, or $0.05 per
> diluted share.
>
> For the same period last year, the Company reported net earnings of $16.8 million, or
> $0.35 per diluted share. This included, on an after-tax basis, (1) a benefit of $8.4
> million, or $0.17 per diluted share, resulting from the settlement of certain retirement
> benefit obligations partially offset by (2) a charge for severance of $2.2 million, or
> $0.04 per diluted share and (3) a charge of $0.9 million, or $0.02 per diluted share,
> related to the closing of certain Bailey Banks & Biddle locations. Excluding these
> items, third quarter earnings in 2006 amounted to $11.6 million, or $0.24 per diluted
> share.
>
> Revenues for the quarter ended April 30, 2007 were $511.9 million compared to
> $526.9 million last year, a decrease of 2.9%. Revenues recognized were $8.7 million
> or 1.7% less than prior year as a result of the change made in the method of
> amortizing jewelry protection plan sales. Comparable store sales for the third quarter
> decreased 3.4%.
>
> Year-to-date revenues were flat at $1.95 billion, compared to the same period last
> year. Excluding revenues of $24.3 million related to Bailey Banks & Biddle store
> closures in the second quarter of last year, year-to-date revenues increased 1.3%.
> Year-to-date comparable store sales decreased 0.1%. Year-to-date earnings totaled
> $58.6 million or $1.20 per diluted share. These earnings treat forward commodity
> contracts as derivatives under SFAS 133 and reflect the change in revenue
> recognition for jewelry protection plans as a result of the change in the product sold
> during the year. The after-tax impact of derivative versus hedge accounting treatment
> was a $0.6 million loss, or $0.01 per diluted share and the negative impact on
> revenue recognized from the sale of jewelry protection plans was $16.0 million or

$0.33 per diluted share. Excluding these items, year-to-date net earnings were $75.3 million, or $1.54 per diluted share. For the same period last year, earnings were $81.0 million, or $1.63 per diluted share. These prior year earnings include, on an after-tax basis, (1) costs related to the closing of Bailey Banks & Biddle stores of $21.4 million, or $0.43 per diluted share, and (2) severance payments of $7.6 million, or $0.16 per diluted share; this was partially offset by (3) a tax benefit from repatriated Canadian earnings under the American Jobs Creation Act of $11.5 million, or $0.23 per diluted share and (4) an $8.4 million, or $0.17 per diluted share, benefit resulting from the settlement of certain retirement benefit obligations. Excluding these items, the Company reported year-to-date earnings of $90.1 million last year, or $1.82 per diluted share.

"While comp store sales decreased 3.4%, a focus on maximizing gross margin dollars and good expense control contributed to earnings in-line with expectations for the quarter," commented Betsy Burton, Chief Executive Officer.

Ms. Burton continued, "We believe retail in general is showing signs of weakness, and higher gas prices have directly impacted the discretionary income of the moderate customer. Given these overall macro trends, we are lowering our sales projections and, while cautious, we are maintaining our current earnings guidance for fourth quarter."

25.    On June 11, 2007, Zale filed its Quarterly Report with the SEC on Form 10-Q for the 2007 fiscal third quarter.  The Company's Form 10-Q was signed by Defendant Gordon and reaffirmed the Company's financial results previously announced on May 22, 2007.  The Company's Form 10-Q also contained Sarbanes-Oxley required certifications, signed by Defendants Burton and Carter, substantially similar to the certifications contained in ¶21, *supra*.

26.    On August 30, 2007, Zale issued a press release entitled, "Zale Reports Fourth Quarter and Full Year Financial Results."  Therein, the Company, in relevant part, stated:

DALLAS--(BUSINESS WIRE)--Aug. 30, 2007--Zale Corporation (NYSE: ZLC), a leading specialty retailer of fine jewelry in North America, today reported net earnings of $1.5 million, or $0.03 per diluted share for the Company's fourth quarter ended July 31, 2007. Earnings for the quarter include, on an after-tax basis, (1) a reduction of $6.3 million, or $0.13 per diluted share due to the delay in revenue

recognized from the change to a lifetime jewelry protection plan, (2) a benefit of $1.1 million, or $0.02 per diluted share for the net impact of derivative versus hedge accounting on its gold and silver contracts, and (3) a net tax benefit of $6.7 million, or $0.14 per diluted share primarily related to a decision to indefinitely reinvest certain undistributed foreign earnings in accordance with APB 23. Excluding these items, the Company reported earnings of $0.0 million, or $0.00 per diluted share.

For the same period last year, the Company reported a net loss of $27.4 million, or $0.57 per share. This loss included a mostly non-cash after-tax charge of $23.9 million, or $0.50 per share, primarily consisting of impairments and store closure charges. The Company also recorded an increase in accrued percentage rent of $1.5 million after-tax, or $0.03 per share, related to prior periods, a $1.9 million, or $0.04 per share tax charge related primarily to Canadian earnings and an after-tax impact of derivative versus hedge accounting treatment of a $1.0 million loss, or $0.02 per share for its commodities contracts. Excluding these items, the Company reported earnings of $1.0 million, or $0.02 per diluted share.

Revenues for the quarter ended July 31, 2007 were $488 million compared to $491 million last year, a decrease of 0.5%. Revenues recognized were $7.5 million or 1.5% less than prior year as a result of the change made in the method of amortizing jewelry protection plan sales. Comparable store sales for the fourth quarter decreased 0.5%.

"Improving sales trends post Mother's Day combined with a focus on maximizing gross margin dollars and good expense control resulted in earnings at the high end of expectations," commented Betsy Burton, Chief Executive Officer.

Ms. Burton continued, "Fiscal 2007 was a year in which we focused on going back to the basics. We tested investments in inventory assortments as well as in payroll and marketing. While many of these initiatives paid off, others have been pared back. We will take these learnings as well as the opportunity to refine our pricing and promotional strategy for this Holiday to drive meaningful earnings improvement in our all-important second quarter of fiscal 2008. Additionally, we believe some of the organizational changes that we made will give us the ability to positively impact the business going forward. For fiscal 2008, we expect earnings improvement, a significant reduction in inventory and the continued success of our lifetime jewelry protection plans to generate approximately $125 million to $150 million in free cash flow."

Ms. Burton concluded, "For the past year, we have looked at many aspects of our business, from our portfolio strategy and brand positioning to opportunities to improve the core business. We believe we have a significant opportunity to drive shareholder value both near-term and long-term. This strategy consists of improving productivity of our core mall business, a growth strategy centered on our brands that produce the highest returns on capital, and the migration to a more centralized,

streamlined organization."

Fiscal 2007 Results

Net earnings for fiscal year 2007 were $59.3 million or $1.21 per share. These earnings treat forward commodity contracts as derivatives under SFAS 133 and reflect the change in revenue recognition for jewelry protection plans as a result of the extended service period covered by plans during the year. The after-tax impact of derivative versus hedge accounting treatment was a $0.4 million benefit, or $0.01 per share, the negative impact on revenue recognized from the sale of jewelry protection plans was $22.3 million, or $0.46 per share and a tax benefit of $6.7 million, or $0.14 per share primarily related to the decision to indefinitely reinvest certain undistributed foreign earnings in accordance with APB 23. Excluding these items, fiscal 2007 net earnings were $74.4 million, or $1.52 per share.

For the same period last year, earnings were $53.6 million, or $1.09 per share. These prior year earnings include, on an after-tax basis, (1) impairments and store closure charges of $45.1 million, or $0.92 per share, (2) severance payments of $7.5 million, or $0.15 per share, (3) a $1.0 million, or $0.02 per share impact of derivative versus hedge accounting treatment and (4) a $1.5 million, or $0.03 per share charge for percentage rent related to prior years; which were partially offset by (5) a tax benefit primarily related to repatriated Canadian earnings under the American Jobs Creation Act of $9.5 million, or $0.19 per share, and (6) an $8.4 million, or $0.17 per share, benefit resulting from the settlement of certain retirement benefit obligations. Excluding these items, the Company reported earnings of $90.9 million last year, or $1.85 per share.

For the full fiscal year, revenues were flat at $2.44 billion, compared to the same period last year. Full fiscal year comparable store sales decreased 0.2%.

27.    On October 1, 2007, Zale filed its Annual Report with the SEC on Form 10-K for the 2007 fiscal year.  The Company's Form 10-K was signed by Defendant Burton and reaffirmed the Company's financial results previously announced on August 30, 2007.  The Company's Form 10-K also contained Sarbanes-Oxley required certifications, signed by Defendants Burton and Carter, substantially similar to the certifications contained in ¶21, *supra*.  The Company's Form 10-K, in relevant part, stated Zale's accounting policy for advertising expenses:

***Advertising Expenses***.    Advertising is generally expensed when incurred and is a

component of SG&A. All related production costs are expensed upon the first

occurrence of the advertisement. Advertising expenses were $104.5 million, $106.2

million and $93.2 million for the fiscal years ended July 31, 2007, 2006 and 2005,

respectively, net of amounts contributed by vendors. The amounts of prepaid

advertising at July 31, 2007, 2006 and 2005 were $17.7 million, $16.5 million and

$9.8 million, respectively, and are classified as components of other current assets in

the accompanying consolidated balance sheets.

(Emphasis in original).

28.    On November 20, 2007, Zale issued a press release entitled, "Zale Corporation

Reports First Quarter Earnings Results and Details on Its $200 Million Share Repurchase Program."

 Therein, the Company, in relevant part, stated:

> DALLAS--(BUSINESS WIRE)--Nov. 20, 2007--Zale Corporation (NYSE: ZLC), a
> leading specialty retailer of fine jewelry in North America, today reported a net loss
> of $28.4 million, or $0.58 per share, for the Company's first quarter ended October
> 31, 2007. As previously announced, the sale of Bailey Banks & Biddle was
> completed on November 9, 2007. Net loss from continuing operations was $26.7
> million, or $0.54 per share and the loss from discontinued operations related to the
> Bailey Banks & Biddle brand was $1.7 million or $0.04 per share. For the same
> period last year, the Company reported a net loss of $26.4 million, or $0.55 per
> share, and the net loss from continuing operations was $24.7 million, or $0.51 per
> share. This loss included $4.8 million or $0.10 per share negative net impact of
> derivative accounting treatment for its gold and silver contracts.
>
> Total revenues for the quarter ended October 31, 2007 were $377 million compared
> to $382 million last year, a decrease of 1.3%. Comparable store sales for the first
> quarter decreased 0.4%. Revenues including Bailey Banks & Biddle for the first
> quarter were $428 million compared to last year's revenue of $432 million, a
> decrease of 1.0%.
>
> Cash from warranty sales, excluding Bailey Banks & Biddle, increased $9.5 million
> over the first quarter last year and revenues recognized were $6.1 million less than
> the prior year as a result of the change made in the warranty offering. The increase in
> unrecognized revenues on the balance sheet was $14.3 million in the first quarter, or
> $0.18 in future earnings per share.

"Earnings performance met expectations for the quarter as we offset slightly lower

sales with gross margin rate improvement across all brands after adjusting for the

warranty change," commented Betsy Burton, President and Chief Executive Officer.

"We continue to execute our strategy of maximizing gross margin dollars and

maintaining good expense control in the current challenging macro environment."

29.     December 10, 2007, Zale filed its Quarterly Report with the SEC on Form 10-Q for

the 2008 fiscal first quarter.  The Company's Form 10-Q was signed by Defendant Gordon and

reaffirmed the Company's financial results previously announced on November 20, 2007.  The

Company's Form 10-Q also contained Sarbanes-Oxley required certifications, signed by Defendants

Gordon and Carter, substantially similar to the certifications contained in ¶21, *supra*.

30.     On February 21, 2008, Zale issued a press release entitled, "Zale Corporation reports

        Reports

Diluted EPS of $1.16 for the Second Quarter of Fiscal 2008."  Therein, the Company, in relevant

part, stated:

> DALLAS--(BUSINESS WIRE)--Feb. 21, 2008--Zale Corporation (NYSE:ZLC), a
> leading specialty retailer of fine jewelry in North America, today announced earnings
> from continuing operations for the second quarter of fiscal 2008 of $52.7 million, or
> $1.16 per diluted share, compared to $77.1 million, or $1.57 per diluted share for the
> second quarter of fiscal 2007. The second quarter ended January 31, 2007 included a
> $2.5 million, or $0.05 per diluted share, positive impact related to derivative
> accounting treatment for the Company's gold and silver contracts.
>
> "While these second quarter results are disappointing, I am convinced that Zale has a
> strong basis for improved performance as we again provide our value-oriented
> customer with an exceptional experience," said Neal Goldberg, President and Chief
> Executive Officer.
>
> "We intend to make Zale into a more nimble and efficient organization. We remain
> focused on the generation of free cash flow, achieving a high return on capital and
> maintaining financial rigor and discipline overall. Our first step is a reduction of

15

$100 million in excess inventory. We have conducted a detailed review by category and item and believe this product can be sold at a profit. Through fiscal 2008 we expect a negative impact on gross margin of approximately 500 basis points which is expected to be more than offset by the positive impact on free cash flow. Although we plan to make some selective investments, this $100 million reduction is not intended to be replenished. These actions are designed to ensure Zale's success and generate value for shareholders over the long-term."

Second Quarter of 2008

-- Total revenues for the second quarter ended January 31, 2008 were $828 million compared to $892 million last year, a decrease of 7.2%

-- Comparable store sales for the second quarter decreased 7.3%

-- Unrecognized revenues related to warranty sales increased $33 million or $0.44 per diluted share. This compares to an increase in unrecognized revenue of $30 million or $0.37 per diluted share in the second quarter of last year. Including the impact of unrecognized revenues, adjusted earnings are $1.60 per diluted share this year compared to $1.89 per diluted share excluding a $0.05 gain from derivatives last year.

-- Retired 5.8 million shares during the second quarter. Anticipate retiring approximately 11 million shares in total once share repurchase program is completed.

First Half of 2008
-- Total revenues for the six months ended January 31, 2008 were $1.205 billion compared to $1.274 billion last year, a decrease of 5.4%

-- Comparable store sales for the six months ended January 31, 2008 decreased 5.1%

-- Unrecognized revenue related to warranty sales increased $47 million or $0.61 per diluted share. This compares to an increase in unrecognized revenue of $29 million or $0.36 per diluted share for the six months ended January 31, 2007. Including the impact of unrecognized revenues, adjusted earnings are $1.16 per diluted share this year compared to $1.48 per diluted share excluding a $0.04 loss from derivatives last year.

-- Earnings from continuing operations for the six months ended
January 31, 2008 were $26.0 million, or $0.55 per diluted
share, compared to $52.4 million, or $1.08 per diluted share
for the six months ended January 31, 2007. The six months
ended January 31, 2007 included a $2.3 million, or $0.04 per
diluted share, negative impact related to derivative
accounting treatment for the Company's gold and silver
contracts.

31.    On March 10, 2008, Zale filed its Quarterly Report with the SEC on Form 10-Q for

the 2008 fiscal second quarter.  The Company's Form 10-Q was signed by Defendant Gordon and

reaffirmed the Company's financial results previously announced on February 21, 2008.  The

Company's Form 10-Q also contained Sarbanes-Oxley required certifications, signed by Defendants

Goldberg and Carter, substantially similar to the certifications contained in ¶21, *supra*.

32.    On May 22, 2008, Zale issued a press release entitled, "Zale Corporation Reports

EPS Loss of $0.42 for the Third Quarter of Fiscal 2008."  Therein, the Company, in relevant

part, stated:

-- Warranty adjusted EPS loss of $0.17 for the third quarter -- 5.8% increase in third quarter
comparable store sales -- Better-than-expected progress on inventory reduction program --
Approximately 8.1 million shares repurchased during third quarter -- 13.8 million shares
repurchased fiscal YTD at an average price of $18.06

DALLAS, May 22, 2008 (BUSINESS WIRE) -- Zale Corporation (NYSE: ZLC), a
leading specialty retailer of fine jewelry in North America, today reported a net loss
from continuing operations for the third quarter of fiscal 2008 of $17.4 million, or
$0.42 per share, compared to a loss of $5.0 million, or $0.10 per share for the third
quarter of fiscal 2007.

In February, Zale launched a program to permanently reduce inventory levels in
order to better clarify merchandise presentation, improve inventory efficiency and to
help position the Company for the future. The Company's goal was to achieve a $100
million reduction in inventory at an anticipated 500 basis point negative impact on
gross margin in the second half of fiscal 2008. During the third quarter, the clearance
strategy exceeded expectations, resulting in the liquidation of $55 million of
inventory with a 460 basis point reduction in gross margin. Earnings per share for the
quarter was negatively impacted compared to the prior year reflecting the gross

17

margin compression related to the liquidation, the Company's aggressive stock repurchases, and a change to the effective tax rate.

"We are very pleased with our progress this quarter against our plan," said Neal Goldberg, President and Chief Executive Officer. "We have a focused agenda to improve performance and the team has stayed locked-in on achieving our objectives. This includes focusing on our core customer by clarifying our merchandise offering, improving our value proposition and simplifying our marketing message that is led by product and supported by price. We are enhancing our operational effectiveness through the implementation of our efficiency program and the proper alignment of the organizational structure. Finally, we are maintaining financial rigor and discipline by executing on our inventory liquidation program, generating savings from the $65 plus million in identified expense reductions and returning value to shareholders through a significant stock repurchase program."

Third Quarter of 2008

-- Revenues for the third quarter ended April 30, 2008 were $477 million compared to $449 million last year, an increase of 6.2%.

-- Comparable store sales for the third quarter increased 5.8%.

-- Unrecognized revenues related to warranty sales increased $17 million or $0.25 per diluted share. This compares to an increase in unrecognized revenue of $19 million or $0.23 per diluted share in the third quarter of last year. Including the impact of unrecognized revenues, the adjusted loss is $0.17 per share this year compared to earnings of $0.10 per diluted share last year including a $0.03 negative impact from derivatives.

-- Repurchased approximately 8.1 million shares during the third quarter. Shares outstanding were 35.5 million at April 30, 2008.

33.     On June 6, 2008, Zale filed its Quarterly Report with the SEC on Form 10-Q for the 2008 fiscal third quarter.  The Company's Form 10-Q was signed by Defendant Gordon and reaffirmed the Company's financial results previously announced on May 22, 2008.  The Company's Form 10-Q also contained Sarbanes-Oxley required certifications, signed by Defendants Goldberg and Carter, substantially similar to the certifications contained in ¶21, *supra*.

34.     On August 28, 2008, Zale issued a press release entitled, "Zale Corporation Reports

EPS Loss of $0.15 for the Fourth Quarter of Fiscal 2008." Therein, the Company, in relevant part, stated:

> -- 6.1% increase in fourth quarter comparable store sales -- $127 million clearance inventory reduction in fiscal 2008 -- 17.6 million shares were repurchased in fiscal 2008; 36% reduction in outstanding shares -- Fiscal year 2009 EPS guidance of $1.10 - $1.25; EPS adjusted for total warranty sales of $2.35 - $2.50 -- Fiscal year 2009 Free Cash Flow guidance of $145 - $155 million

> DALLAS, Aug 28, 2008 (BUSINESS WIRE) -- Zale Corporation (NYSE: ZLC), a leading specialty retailer of fine jewelry in North America, today reported a net loss from continuing operations for the fourth quarter of fiscal 2008 of $4.9 million, or $0.15 per share, compared to net earnings from continuing operations of $0.7 million, or $0.01 per diluted share, for the fourth quarter of fiscal 2007.

> The loss for the fourth quarter of fiscal 2008 includes a benefit associated with the release of a vacation accrual of $7.7 million, net of taxes, or $0.23 per share, and a gain on the sale of an unproductive asset of $3.5 million, or $0.10 per share. The earnings for the fourth quarter of fiscal 2007 included a benefit of $1.1 million, or $0.02 per share, for the net impact of derivative versus hedge accounting on the Company's gold and silver contracts and a net tax benefit of $6.7 million, or $0.14 per diluted share, primarily related to a decision to indefinitely reinvest certain undistributed foreign earnings in accordance with APB 23.

> "In the fourth quarter, we exceeded our expectations for sales, earnings and inventory reduction," said Neal Goldberg, Chief Executive Officer. "We sustained the strong momentum we achieved in our third quarter as we made improvements to our core assortment and executed our clearance strategy, driving our second straight quarterly comp store increase of approximately 6%. This demonstrates our ability to continue to drive traffic and capture market share in a tough environment."

> Mr. Goldberg concluded, "After a challenging start to fiscal 2008, which included a disappointing Holiday season, we executed a focused agenda with clear objectives. To improve performance over the current fiscal year and beyond, we are concentrating on improving our customer focus, enhancing operational effectiveness and maintaining financial discipline. Specific actions we are taking to achieve these objectives include differentiating our product offering by simplifying and focusing our assortment; streamlining the organization to eliminate redundancies; realizing $65 plus million in ongoing annualized savings; and permanently reducing $100 million in inventory. We believe, given the progress made against our initiatives, that we are well-positioned as we enter the new fiscal year."

*     *     *

Fourth Quarter of 2008

-- Revenues for the fourth quarter ended July 31, 2008 were $456
million compared to $430 million last year, an increase of 6.1%.
-- Comparable store sales for the fourth quarter increased 6.1%.
-- Repurchased approximately 3.9 million shares during the fourth
quarter. Shares outstanding were approximately 32 million at July
31, 2008.

Full Year 2008

-- Revenues for the twelve months ended July 31, 2008 were $2.14
billion compared to $2.15 billion last year, a decrease of 0.7%.
-- Comparable store sales for the twelve months ended July 31, 2008
decreased 0.7%.
-- Earnings from continuing operations for the twelve months ended
July 31, 2008 were $3.7 million or $0.09 per diluted share, compared
to earnings of $48.1 million, or $0.98 per diluted share for the
twelve months ended July 31, 2007.
-- Approximately 17.6 million shares were repurchased in fiscal 2008
at an average price of $18.59. This represents approximately $327
million of the $350 million stock repurchase authorization - a 36%
reduction in actual shares in fiscal 2008.

35.    On September 26, 2008, Zale filed its Annual Report with the SEC on Form 10-K for

the 2008 fiscal year.  The Company's Form 10-K was signed by Defendant Goldberg and reaffirmed

the Company's financial results previously announced on August 28, 2008.  The Company's Form

10-K also contained Sarbanes-Oxley required certifications, signed by Defendants Goldberg and

Carter, substantially similar to the certifications contained in ¶21, *supra*.  The Company's Form 10-

K, in relevant part, stated Zale's accounting policy for advertising expenses:

> ***Advertising Expenses***.    Advertising is generally expensed when incurred and is a
>
> component of SG&A. All related production costs are expensed upon the first
>
> occurrence of the advertisement. Advertising expenses were $94.3 million, $93.4
>
> million and $96.1 million for the fiscal years ended July 31, 2008, 2007 and 2006,
>
> respectively, net of amounts contributed by vendors. The amounts of prepaid

advertising at July 31, 2008 and 2007 were $22.9 million and $17.7 million, respectively, and are classified as components of other current assets in the accompanying consolidated balance sheets.

(Emphasis in original).

36.    On November 25, 2008, Zale issued a press release entitled, "Zale Corporation Reports First Quarter Fiscal 2009 Results." Therein, the Company, in relevant part, stated:

3.7% decrease in first quarter comparable store sales

DALLAS, Nov 25, 2008 (BUSINESS WIRE)

  * Net loss per share of $1.43 for the first quarter
  * Net loss per share adjusted for total warranty sales of $1.33

Zale Corporation (NYSE: ZLC) today reported a net loss from continuing operations of $45.3 million, or $1.43 per share for the first quarter ended October 31, 2008, compared to a net loss from continuing operations of $26.7 million, or $0.54 per share, for the prior year period. Revenues were $364 million, compared to $377 million in the prior period, a decrease of 3.5%. During the quarter comparable store sales decreased 3.7% compared to the prior year.

Of the year-over-year decline in the net loss per share from continuing operations, $0.44 was due to a 35% lower share count in the fiscal 2009 quarter and $0.18 resulted from a decrease in the estimated annual effective tax rate. During the quarter ended October 31, 2008 the Company had a weighted average number of common shares outstanding of 31.8 million fully diluted, compared to 49.1 million in the prior year period.

Total warranty sales were $21 million, excluding a $4 million decline in the value of the Canadian dollar from period to period. Warranty sales including the Canadian dollar decline were $17 million compared to $24 million in the prior period. Adjusted for total warranty sales, the net loss from continuing operations was $42.0 million, or $1.33 per share, compared to a net loss from continuing operations of $17.9 million, or $0.36 per share for the comparable quarter in fiscal 2008.

During the first quarter of fiscal 2009, the Company liquidated $47 million in excess inventory, bringing total inventory liquidations since inception of the strategy in February to $174 million. At October 31, 2008, merchandise inventories were down $21 million compared to the prior year period.

"Though the national economic environment is challenging, we have continued to deliver strong performance on both store operations and cost control. We have recently eliminated almost $15 million of additional capital expenditures from our fiscal 2009 plan, and we intend to find more avenues for reducing both capital and expenses in the coming year. Our work to consolidate and speed up our supply chain should enable us to run with significantly lower inventory, driving greatly improved turns," said Neal Goldberg, Zale Chief Executive Officer. "We have worked hard to improve the selection of merchandise and the overall experience our customers will have during this Holiday season. We believe that Zale's position as the value provider in the industry will serve us well in these economic conditions," added Goldberg.

37.    On December 8, 2008, Zale filed its Quarterly Report with the SEC on Form 10-Q for the 2009 fiscal first quarter.  The Company's Form 10-Q was signed by Defendant Gordon and reaffirmed the Company's financial results previously announced on November 25, 2008.  The Company's Form 10-Q also contained Sarbanes-Oxley required certifications, signed by Defendants Goldberg and Carter, substantially similar to the certifications contained in ¶21, *supra*.

38.    On February 25, 2009, Zale issued a press release entitled, "Zale Reports Second Quarter Fiscal 2009 Results."  Therein, the Company, in relevant part, stated:

Announces Additional $140 Million in Cost Savings and Inventory Reductions

DALLAS--(BUSINESS WIRE)--Feb. 25, 2009-- Zale Corporation (NYSE: ZLC), a leading specialty retailer of fine jewelry in North America, today announced a net loss from continuing operations of $23.6 million, or $0.74 per share, for the second quarter ended January 31, 2009, that includes approximately, on an after-tax basis, (1) charges related to store impairments of $5.0 million, or $0.16 per share, (2) charges related to goodwill impairments of $5.0 million, or $0.16 per share, and (3) an $18.6 million charge, or $0.58 per share, related to a valuation reserve on foreign

tax credits resulting from our decision to revoke our election under Accounting Principles Board No. 23, "Accounting for Income Taxes – Special Areas." Excluding these charges, earnings for the second quarter were $5.1 million, or $0.16 per share. Earnings from continuing operations for the prior year period was $52.7 million, or $1.16 per share.

Revenues for the second quarter of fiscal 2009 were $679 million, compared to $828 million in the prior period, a decrease of 17.9%. During the quarter comparable store sales decreased 18.1% compared to the prior year.

Total warranty sales for the quarter were $36 million, compared to $43 million in the prior year. Adjusted for total warranty sales and other special items, the net earnings from continuing operations was $19.1 million, or $0.60 per share, compared to net earnings from continuing operations of $72.6 million, or $1.60 per share for the comparable quarter in fiscal 2008.

Neal Goldberg, Chief Executive Officer, commented, "Our operating results were negatively impacted by the extremely weak macro-economic environment. Additionally, in response to the continued deterioration in the business, we aggressively promoted store-wide discounts during our holiday sales season. We believe these discounts decreased gross margin by approximately 500 basis points."

Mr. Goldberg continued, "We have identified key factors to improve our results. Immediately following Christmas, we returned to a strategy that emphasized emotion with a promotional posture that is item-specific. The result has been more normalized 50% plus merchandise margins, along with comparable store sales improvement since the trends at Holiday. These comparable store sales and margin improvements have held from January through the Valentine's Day selling period. Furthermore, we have identified additional inventory and expenses to drive out of the business. The plan will phase in savings intended to rationalize the size and scale of the organization to sales trends."

39.    On March 11, 2009, Zale filed its Quarterly Report with the SEC on Form 10-Q for the 2009 fiscal second quarter. The Company's Form 10-Q was signed by Defendant Gordon and reaffirmed the Company's financial results previously announced on February 25, 2009. The

Company's Form 10-Q also contained Sarbanes-Oxley required certifications, signed by Defendants Goldberg and Gordon, substantially similar to the certifications contained in ¶21, *supra*.

40.    On May 27, 2009, Zale issued a press release entitled, "Zale Reports Third Quarter Fiscal 2009 Results."  Therein, the Company, in relevant part, stated:

> Comparable Store Sales Down 20% for the Third Quarter Third Quarter Gross Margin Increases to 50.1% SG&A Down $22 Million Compared to Prior Year Debt Reduced $57 Million During the Third Quarter

> DALLAS--(BUSINESS WIRE)--May. 27, 2009-- Zale Corporation (NYSE: ZLC), a leading specialty retailer of fine jewelry in North America, today announced a net loss from continuing operations of $23.2 million, or $0.73 per share, compared to a loss of $17.4 million, or $0.42 per share, for the third quarter ended April 30, 2009 and 2008, respectively. As compared with the prior year, earnings per share were negatively impacted by $0.17 related to the 10 million reduced outstanding share count.

> Revenues for the third quarter of fiscal 2009 were $379 million as compared to $477 million for the prior period, a decrease of 20.5%. During the quarter comparable store sales decreased 20.0% as compared to an increase of 5.8% for the 2008 period. The prior year's results were positively impacted by a clearance initiative that permanently reduced inventory by $100 million. The Company achieved a gross margin on sales during the third quarter of fiscal 2009 of 50.1%, compared to 47.5% the prior year. Overall results were impacted positively by a reduction of aggregate selling, general and administrative expense by $22 million compared to the prior year, primarily resulting from the impact of cost reductions previously implemented by the Company. The Company is currently in the process of implementing additional reductions in operating costs including realigning its rent structure with sales trends, closing underperforming stores, renewing leases that offer the best returns and negotiating an efficient exit from its Bailey, Banks and Biddle contingent liability.

> As of April 30, 2009, the Company had outstanding debt of $333 million, a reduction of $57 million from the second quarter of fiscal 2009.

> "Our key goals coming into the quarter were to strengthen and stabilize the foundation of the business while recapturing the gross margin we lost from our promotional stance during Holiday," commented Neal Goldberg, Chief Executive Officer. "We accomplished these goals as we generated positive free cash flow for the period with debt levels being reduced approximately $57 million from the second quarter and gross margins returning to above 50%."

Mr. Goldberg concluded, "While we have taken important steps to creating a more efficient business model, we are up against difficult same store sales comparisons due to the clearance initiative through September 2009."

41.    On June 9, 2009, Zale filed its Quarterly Report with the SEC on Form 10-Q for the 2009 fiscal third quarter.  The Company's Form 10-Q was signed by Defendant Gordon and reaffirmed the Company's financial results previously announced on May 27, 2009.  The Company's Form 10-Q also contained Sarbanes-Oxley required certifications, signed by Defendants Goldberg and Gordon, substantially similar to the certifications contained in ¶21, *supra*.

42.    The statements contained in  ¶¶20-41, were materially false and/or misleading when made because defendants failed to disclose or indicate the following: (1) that the Company improperly recorded certain advertising costs as prepaid advertising rather than recording the cost as an expense; (2) that the Company improperly accounted for intercompany accounts receivable associated with its wholly owned insurance subsidiaries; (3) that, as a result, the Company's financial results were overstated during the Class Period; (4) that the Company's financial results were not prepared in accordance with GAAP; (5) that the Company lacked adequate internal and financial controls; and (6) that, as a result of the above, the Company's financial statements were materially false and misleading at all relevant times.

### The Truth Begins To Emerge

43.    On September 2, 2009, Zale issued a press release entitled, "Zale Reschedules Fourth Quarter Conference Call."  Therein, the Company, in relevant part, stated:

DALLAS--(BUSINESS WIRE)--Sep. 2, 2009-- Zale Corporation (NYSE: ZLC), today announced that it has rescheduled the release date for its fiscal 2009 financial results to Wednesday, September 9, 2009 at 9:00 a.m. ET. During the finalization of

the Company's year-end closing, certain non-cash adjustments were identified impacting prior period results aggregating approximately $13.0 million pre-tax, of which approximately $6.3 million relates to years prior to fiscal 2000. The Company is in the process of finalizing the appropriate accounting treatment for those adjustments.

44.    On September 8, 2009, Zale issued a press release entitled, "Zale Postpones Fourth Quarter Results." Therein, the Company, in relevant part, stated:

DALLAS--(BUSINESS WIRE)--Sep. 8, 2009-- Zale Corporation (NYSE: ZLC) today announced that it is postponing its earnings release and investor conference call previously scheduled for Wednesday, September 9 at 9:00 a.m. ET in order to finalize a review of accounting for prepaid advertising costs that surfaced during the Company's year-end closing process. Once complete, the Company will announce the date of its earnings call and provide additional details.

45.    On September 18, 2009, Zale filed a Current Report with the SEC on Form 8-K. Therein, the Company, in relevant part, stated:

**Item 4.02.    Non-Reliance on Previously Issued Financial Statements or a Related Audit Report or Completed Interim Review.**

On September 17, 2009, management of Zale Corporation (the "Company") and the Audit Committee of the Company's Board of Directors, in consultation with the Company's independent registered public accounting firm, Ernst & Young LLP, concluded that the Company's previously issued financial statements for fiscal years 2008 and 2007, and interim periods therein and subsequent, included in the Company's filings with the Securities and Exchange Commission contain the errors specified below and should no longer be relied upon. Therefore, the Company plans to restate its financial statements for fiscal 2008 and interim periods in fiscal 2008 and 2009, and will present the restated financial statements in its Annual Report on Form 10-K ("10-K") for the fiscal year ended July 31, 2009. The Company currently expects to file its 10-K on or before October 29, 2009, although this date may change

if unforeseen circumstances arise. The restatement pertains to the following issues:

· A significant portion of prepaid advertising costs should have been recorded as expense. Prepaid advertising reflected in our balance sheets as of July 31, 2008 and 2007 totaled approximately $23 million and $18 million, respectively.

· Certain adjustments aggregating approximately $9 million on a pre-tax basis, including (1) a charge related to an intercompany accounts receivable associated with our wholly owned insurance subsidiaries, (2) a charge related to certain depository bank account reconciliations and (3) a benefit related to personal property tax reserves. In addition, a charge totaling approximately $4 million will be recorded in fiscal 2008 related to federal income taxes resulting from the expiration of net operating loss carryforwards.

The adjustments required for fiscal 2008 and 2007 and subsequent quarterly periods have not been finalized, and the restatement is not complete as of the date of this filing. Additional information may become available which could cause the Company's current estimates to change, and such changes, if any, could be material.

(Emphasis in original).

46. The statements contained in ¶¶43-45, were materially false and/or misleading when made because defendants failed to disclose or indicate the following: (1) that the Company improperly recorded certain advertising costs as prepaid advertising rather than recording the cost as an expense; (2) that the Company improperly accounted for intercompany accounts receivable associated with its wholly owned insurance subsidiaries; (3) that, as a result, the Company's financial results were overstated during the Class Period; (4) that the Company's financial results were not prepared in accordance with GAAP; (5) that the Company lacked adequate internal and financial controls; and (6) that, as a result of the above, the Company's financial statements were materially false and misleading at all relevant times.

47. On October 29, 2009, Zale issued a press release entitled, "Zale Corporation Reports

27

Fiscal 2009 Results." Therein, the Company, in relevant part, stated:

> DALLAS--(BUSINESS WIRE)--Oct. 29, 2009-- Zale Corporation (NYSE: ZLC) today reported its financial results for the fourth quarter and full year ended July 31, 2009. The Company incurred a net loss for the year ended July 31, 2009 of $189.5 million, or $5.94 per share, compared to a net loss from continuing operations of $6.5 million, or $0.15 per share, in fiscal 2008. For fiscal year 2009, revenues were $1.78 billion compared to $2.14 billion for fiscal 2008, a decrease of 16.8%. Comparable store sales declined 16.6% for fiscal 2009 compared with a decline of 0.7% in the prior year. Gross margin for fiscal 2009 was 46.7% compared to 49.0% in the prior year.

> For the fiscal year 2009, the Company incurred special charges totaling $92.6 million after tax, or $2.90 per share. These charges included, net of tax: (1) $16.5 million for store closures; (2) $9.1 million for store impairments; (3) $14.1 million for lease contingencies associated with Bailey Banks & Biddle; (4) $8.3 million for inventory impairment; (5) $5.0 million goodwill impairment; and (6) $39.6 million for tax adjustments. Of the total adjustments, $70.8 million, or $2.22 per share, were recorded in the fiscal fourth quarter ended July 31, 2009. Net loss for fiscal 2009, adjusted for special charges, was $96.9 million, or $3.04 per share, compared to a net loss from continuing operations, adjusted for special gains, of $16.5 million, or $0.39 per share in the prior year.

> For the fourth quarter ended July 31, 2009, the Company reported a net loss of $89.8 million, or $2.81 per share, compared to a loss of $10.0 million, or $0.30 per share in the prior year period. The Company recorded special charges, net of tax, of $70.8 million, or $2.22 per share during the fourth quarter, compared to special gains, net of tax, of $11.0 million, or $0.33 per share during the fourth quarter of fiscal 2008. Revenues in the fourth quarter were $357.1 million, a decline of 21.7% compared to $456.2 million in the 2008 fourth quarter. Comparable store sales for the fourth quarter declined 21.2% compared with an increase of 6.1% during the prior year period, which was favorably impacted by clearance initiatives. Gross margin was 46.4% in the fourth quarter of 2009 compared with 47.3% in the prior year period. Gross margin in the fiscal fourth quarter was 50.2% prior to an inventory impairment charge recorded during the quarter.

> For the year ended July 31, 2009, selling, general and administrative expenses declined $57.8 million, or 5.9%, to $927.2 million compared to $985.0 million in 2008. For the fourth quarter of 2009, selling, general and administrative expenses declined $20.0 million, or 8.9%, to $205.1 million compared to $225.1 million for the prior period. At July 31, 2009, long term debt was $310.5 million, a net reduction of $15.8 million, compared to $326.3 million at July 31, 2008.

> "Our financial results for fiscal 2009 reflected the most difficult year in retailing in memory. Nonetheless, we believe we have positioned the business for much

improved performance," commented Neal Goldberg, Chief Executive Officer. "We have streamlined our cost structure and closed over 200 underperforming locations. We have reduced and realigned inventories and increased our proprietary products and collections. We have emphasized discipline in pricing and promotional strategies, and training for our fine jewelry consultants. We are encouraged that fiscal 2010 to date reflects improved business performance, with sales reflecting the exit of various specialty jewelry competitors, as well as a strengthening economy and our own internal efforts."

"Despite the weak overall environment, during the fourth quarter we generated $29 million of free cash flow and reduced debt by $22 million," commented Matt Appel, Chief Financial Officer. "The rationalization of our store base, reductions in occupancy expense and aggregate square footage and other ongoing expense reductions should all contribute to our efforts in fiscal 2010 to returning the business to profitability and generating cash flow to further reduce debt."

*    *    *

Restated Financial Results

As disclosed in the Company's Form 8-K filing on September 18, 2009, during the finalization of its fiscal 2009 financial statements, the Company concluded that previously issued financial statements for fiscal years 2008 and 2009 would be restated to reflect certain accounting adjustments for advertising costs, intercompany accounts receivable, depository bank accounts, federal income taxes and personal property taxes. Restated financial information for fiscal 2008 and 2009 is detailed in the Company's Annual Report on Form 10-K that was filed on October 29, 2009.

48.    On October 29, 2009, Zale filed its Annual Report with the SEC on Form 10-K for the 2009 fiscal year. The Company's 10-K contained Zale's restated financial results for fiscal 2008 and 2009 reflecting certain accounting adjustments for advertising costs, intercompany accounts receivable, depository bank accounts, federal income taxes, and personal property taxes. Therein, the Company, in relevant part, stated:

On September 17, 2009, management of Zale Corporation (the "Company") and the

Audit Committee of the Company's Board of Directors concluded that the Company's previously issued consolidated financial statements for fiscal years 2008 and prior periods required restatement as a result of adjustments associated with advertising costs, intercompany accounts receivable, depository bank accounts, federal income taxes and personal property tax reserves. The cumulative impact of the adjustments totaled $35.4 million, $32.2 million after taxes, as of July 31, 2008 and consisted of the following items:

- A $23.7 million charge, $20.4 million after taxes, related primarily to prepaid advertising costs. Previously, certain advertising costs were recorded as prepaid advertising subsequent to the period in which the advertisement ran. The charge includes $21.7 million related to fiscal year 2007 and prior periods.

- A $5.9 million charge, $5.1 million after taxes, related to an intercompany accounts receivable associated with our wholly owned insurance subsidiaries. The Company pays certain expenses on behalf of its insurance subsidiaries and is subsequently reimbursed by those subsidiaries. The charge was the result of the Company recording accounts receivable in excess of the actual expenses incurred and included $5.9 million related to fiscal year 2007 and prior periods.

- A $4.2 million charge, $4.6 million after taxes, to correct amounts previously recorded with respect to the reconciliation of certain depository bank accounts. The charge corrected the recording of cash receipts from Bailey Banks & Biddle subsequent to disposition of the brand in fiscal year 2008 and certain other errors associated with our cash reconciliation system. The charge includes $1.5 million related to fiscal year 2007 and prior periods.

- A $3.9 million charge for federal income taxes resulting primarily from an incorrect determination made during fiscal year 2008 related to whether earnings from our Puerto Rican based operations could be utilized to offset U.S. operating losses that were expiring.

- A $2.3 million benefit, $1.8 million after taxes, related to personal property tax reserves. The benefit was the result of excess reserves that were not adjusted on a timely basis following final payments and includes $2.1 million related to fiscal year 2007 and prior periods.

*       *       *

### Advertising

The cumulative impact of the advertising charge totaled $23.7 million, $20.4 million after taxes, as of July 31, 2008 and related primarily to prepaid advertising costs. Previously, certain advertising costs were recorded as prepaid advertising subsequent to the period in which the advertisement ran. The cumulative impact of the advertising charge includes $21.7 million related to fiscal year 2007 and prior periods.

### Intercompany Accounts Receivable

The cumulative impact of the intercompany accounts receivable charge totaled $5.9 million, $5.1 million after taxes, as of July 31, 2008. The charge related to an intercompany accounts receivable associated with our wholly owned insurance subsidiaries. The Company pays certain expenses on behalf of its insurance subsidiaries and is subsequently reimbursed by those subsidiaries. The charge was the result of the Company recording accounts receivable in excess of the actual expenses incurred and included $5.9 million related to fiscal year 2007 and prior periods. The intercompany accounts receivable was previously recorded in accounts payable and accrued liabilities.

### Depository Bank Accounts

The cumulative impact of the depository bank accounts charge totaled $4.2 million, $4.6 million after taxes, as of July 31, 2008. The charge corrected the recording of cash receipts from Bailey Banks & Biddle subsequent to disposition of the brand in fiscal 2008 and certain other errors associated with our cash reconciliation system. The cumulative impact of the depository bank accounts includes $1.5 million related to fiscal year 2007 and prior periods.

### Federal Income Taxes

The cumulative impact of the federal income tax charge totaled $3.9 million as of July 31, 2008. The charge resulted primarily from an incorrect determination made during fiscal year 2008 related to whether earnings from our Puerto Rican based operations could be utilized to offset U.S. operating losses that were expiring.

### Personal Property Tax Reserves

The cumulative impact of the personal property tax reserve benefit totaled $2.3 million, $1.8 million after taxes, as of July 31, 2008. The benefit was the result of excess reserves that were not adjusted on a timely basis following payments and

includes $2.1 million related to fiscal year 2007 and prior periods.

*     *     *

. . . In its assessment of the effectiveness of internal control over financial reporting as of July 31, 2009, the Company determined that there were control deficiencies that constituted material weaknesses in the following areas:

·     The Company did not maintain effective controls over certain account reconciliations. Specifically, account reconciliations associated with advertising, depository bank accounts and intercompany accounts receivable lacked appropriate supporting documentation and were not reviewed in a satisfactory manner. This material weakness contributed to the restatement of the financial statements as of and for the year ended July 31, 2008 included in this Annual Report on Form 10-K.

·     The Company did not maintain effective segregation of duties and oversight with respect to its advertising programs. The responsibility to initiate and approve transactions was maintained by the same individual who determined the timing of when advertising transactions were recorded and expensed. In addition, the appropriate level of oversight did not exist to ensure that advertising transactions were recorded in the appropriate period. This material weakness contributed to the restatement of the financial statements as of and for the year ended July 31, 2008 included in this Annual Report on Form 10-K.

As a result of these material weaknesses, management concluded that the Company did not maintain effective internal control over financial reporting as of July 31, 2009.

The Company's management has taken, or is in the process of taking, various actions that are intended to remediate these material weaknesses. The Company's new Chief Financial Officer, appointed in June 2009, and its new Controller, appointed in July 2009, are overseeing the implementation of these remediation efforts, including:

·     The hiring of an Internal Audit leader and the addition of third party internal audit resources.

·     A review of the Company's internal controls, policies and procedures and organization structure relating to the areas where material weaknesses were identified.

·     The hiring of additional personnel and the retraining of existing personnel within its finance organization.

*     *     *

**ITEM 3.   LEGAL PROCEEDINGS AND OTHER MATTERS**

As a result of the discovery of the matters disclosed in the Company's Form 8-K filed on September 18, 2009, the Audit Committee of the Board of Directors retained outside counsel to review those matters. The review has been concluded and resulted in the restatement of the Company's financial statements, as reported herein. The Audit Committee is monitoring the remediation of the material weaknesses in internal control over financial reporting, as discussed in Exhibit F-1 to this report.

Subsequent to the Company's disclosure in its Form 8-K filed on September 18, 2009 that it would restate certain financial statements, the Staff of the Fort Worth, Texas office of the Securities and Exchange Commission notified the Company that it had begun an investigation and requested certain information relating to the matters disclosed in the Company's Form 8-K. The Company is cooperating with the Staff's investigation. The Company cannot predict the outcome or duration of the SEC investigation, but at this time, the Company does not believe that the investigation will have a material effect on the Company's financial condition or results of operations.

(Emphasis in original).

49.     On this news, shares of Zale declined $1.66 per share, or 25.98%, to close on October 30, 2009, at $4.73 per share, on heavy volume.

<strong>ZALE'S VIOLATION OF GAAP RULES<br/>IN ITS FINANCIAL STATEMENTS<br/><u>FILED WITH THE SEC</u></strong>

50.     These financial statements and the statements about the Company's financial results

33

were false and misleading, as such financial information was not prepared in conformity with GAAP, nor was the financial information a fair presentation of the Company's operations due to the Company's improper accounting for, and disclosure about its revenues, in violation of GAAP rules.

51.     GAAP are those principles recognized by the accounting profession as the conventions, rules and procedures necessary to define accepted accounting practice at a particular time. Regulation S-X (17 C.F.R. § 210.4 01(a) (1)) states that financial statements filed with the SEC which are not prepared in compliance with GAAP are presumed to be misleading and inaccurate. Regulation S-X requires that interim financial statements must also comply with GAAP, with the exception that interim financial statements need not include disclosure which would be duplicative of disclosures accompanying annual financial statements. 17 C.F.R. § 210.10-01(a).

52.     The fact that Zale restated its financial statements, and informed investors that these financial statements should not be relied upon is an admission that they were false and misleading when originally issued (APB No.20, 7-13; SFAS No. 154, 25).

53.     Given these accounting irregularities, the Company announced financial results that were in violation of GAAP and the following principles:

(a)     The principle that "interim financial reporting should be based upon the same accounting principles and practices used to prepare annual financial statements" was violated (APB No. 28, 10);

(b)     The principle that "financial reporting should provide information that is useful to present to potential investors and creditors and other users in making rational investment, credit, and similar decisions" was violated (FASB Statement of Concepts No. 1, 34);

(c)     The principle that "financial reporting should provide information about the economic resources of an enterprise, the claims to those resources, and effects of transactions,

events, and circumstances that change resources and claims to those resources" was violated (FASB Statement of Concepts No. 1, 40);

       (d)    The principle that "financial reporting should provide information about an enterprise's financial performance during a period" was violated (FASB Statement of Concepts No. 1, 42);

       (e)    The principle that "financial reporting should provide information about how management of an enterprise has discharged its stewardship responsibility to owners (stockholders) for the use of enterprise resources entrusted to it" was violated (FASB Statement of Concepts No. 1, 50);

       (f)    The principle that "financial reporting should be reliable in that it represents what it purports to represent" was violated (FASB Statement of Concepts No. 2, 58-59);

       (g)    The principle that "completeness, meaning that nothing is left out of the information that may be necessary to insure that it validly represents underlying events and conditions" was violated (FASB Statement of Concepts No. 2, 79); and

       (h)    The principle that "conservatism be used as a prudent reaction to uncertainty to try to ensure that uncertainties and risks inherent in business situations are adequately considered" was violated (FASB Statement of Concepts No. 2, 95).

    54.    The adverse information concealed by Defendants during the Class Period and detailed above was in violation of Item 303 of Regulation S-K under the federal securities law (17 C.F.R. §229.303).

## CLASS ACTION ALLEGATIONS

    55.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased Zale's

securities between November 16, 2006 and October 29, 2009, inclusive (the "Class Period") and who were damaged thereby. Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

56.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Zale's securities were actively traded on New York Stock Exchange ("NYSE"). While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Millions of Zale shares were traded publicly during the Class Period on the NYSE and as of October 19, 2009, Zale had 31,980,529 shares of common stock outstanding. Record owners and other members of the Class may be identified from records maintained by Zale or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

57.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

58.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

59.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)    Whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)    Whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Zale; and

(c)    To what extent the members of the Class have sustained damages and the proper measure of damages.

60.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

61.    The market for Zale's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Zale's securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired Zale's securities relying upon the integrity of the market price of the Company's securities and market information relating to Zale, and have been damaged thereby.

62.    During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Zale's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  Said statements and omissions were materially false and/or misleading in

that they failed to disclose material adverse information and/or misrepresented the truth about Zale's business, operations, and prospects as alleged herein.

63. At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Zale's financial well-being and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

## LOSS CAUSATION

64. Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

65. During the Class Period, Plaintiff and the Class purchased Zale's securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors's losses.

## SCIENTER ALLEGATIONS

66. As alleged herein, Defendants acted with scienter in that Defendants knew that the

public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding Zale, his/her control over, and/or receipt and/or modification of Zale's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Zale, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

67.     The market for Zale's securities was open, well-developed and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to disclose, Zale's securities traded at artificially inflated prices during the Class Period. On December 5, 2006, the price of the Company's common stock reached a Class Period high of $31.42 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Zale's securities and market information relating to Zale, and have been damaged thereby.

68.     During the Class Period, the artificial inflation of Zale's stock was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Zale's business, prospects, and operations. These material misstatements and/or omissions

created an unrealistically positive assessment of Zale and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company stock. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

69.     At all relevant times, the market for Zale's securities was an efficient market for the following reasons, among others:

(a)     Zale stock met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b)     As a regulated issuer, Zale filed periodic public reports with the SEC and the NYSE;

(c)     Zale regularly communicated with public investors *via* established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)     Zale was followed by securities analysts employed by major brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

70.     As a result of the foregoing, the market for Zale's securities promptly digested current information regarding Zale from all publicly available sources and reflected such information in Zale's stock price. Under these circumstances, all purchasers of Zale's securities

during the Class Period suffered similar injury through their purchase of Zale's securities at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

71.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Zale who knew that the statement was false when made.

## FIRST CLAIM
### Violation of Section 10(b) of
### The Exchange Act and Rule 10b-5
### Promulgated Thereunder Against All Defendants

72.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

73.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing

public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Zale's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

74.    Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Zale's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

75.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Zale's financial well-being and prospects, as specified herein.

76.    These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Zale's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Zale and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit

upon the purchasers of the Company's securities during the Class Period.

77.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

78.     The defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Zale's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities.  As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were

false or misleading.

79.    As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Zale's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Zale's securities during the Class Period at artificially high prices and were damaged thereby.

80.    At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Zale was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Zale securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

81.    By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

82.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

**<u>SECOND CLAIM</u>**

44

**Violation of Section 20(a) of**
**The Exchange Act Against the Individual Defendants**

83.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

84.    The Individual Defendants acted as controlling persons of Zale within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

85.    In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

86.    As set forth above, Zale and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and/or omissions as alleged in this Complaint.  By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the

Exchange Act.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)    Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)    Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)    Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED: November 9, 2009          KENDALL LAW GROUP, LLP

*E. J. Kendall*

_____

JOE KENDALL
State Bar No. 11260700
HAMILTON LINDLEY
State Bar No. 24044838
3232 Mckinney Avenue, Suite 700
Dallas, Texas 75204
Telephone: (214) 744-3000
Facsimile:  (214) 744-3015

**GLANCY BINKOW & GOLDBERG LLP**
Lionel Z. Glancy
Michael Goldberg
1801 Avenue of the Stars, Suite 311
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160


**LAW OFFICES OF HOWARD G. SMITH**
Howard G. Smith
3070 Bristol Pike, Suite 112
Bensalem, PA 19020
Telephone: (215) 638-4847
Facsimile: (215) 638-4867

*Attorneys for Plaintiff Bill Rains*

SWORN CERTIFICATION OF PLAINTIFF

Zale Corporation. SECURITIES LITIGATION

I, Bill Rainz, certify that:

1. I have reviewed the complaint and authorized its filing.

2. I did not purchase Zale Corporation, the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3. I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary

4. My transactions in Zale Corporation during the class period set forth in the Complaint are as follows:

I bought __50__ shares on _9_/_4_/_09_ at $ 5⁹¹ per share.
I bought __40__ shares on _9_/_17_/_09_ at $ 7⁸¹ per share.
I bought __100__ shares on _10_/_29_/_09_ at $ 6⁴⁵ per share.
I bought __145__ shares on _10_/_89_/_09_ at $ 6⁹⁸ per share.
I bought _____ shares on ___/___/___ at $ _____ per share

I sold __335__ shares on _10_/_30_/_09_ at $ 4²⁶ per share.
I sold _____ shares on ___/___/___ at $ _____ per share.
I sold _____ shares on ___/___/___ at $ _____ per share.
I sold _____ shares on ___/___/___ at $ _____ per share.
I sold _____ shares on ___/___/___ at $ _____ per share.

(List Additional Transactions on a Separate Page if Necessary)

5. I have not served as a representative party on behalf of a class under this title during the last three years except as stated:

6. I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

____ ☐ Check here if you are a current employee or former employee of the defendant Company.

I declare under penalty of perjury that the foregoing are true and correct statements.

Dated: 11/6/09

_____
(Please Sign Your Name Above)