IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BILL RAINS, Individually and on Behalf of All Others Similarly Situated, | § § § | |
| Plaintiff, | § § | |
| v. | § | CIVIL ACTION NO. 3:09-CV-2133-B |
| ZALE CORPORATION, et al., | § § § | |
| Defendants. | § § | |
| BRIAN A. LAWYER, Individually and on Behalf of All Others Similarly Situated, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:09-CV-2218-B |
| ZALE CORPORATION, et al., | § § | (Consolidated as In re Zale Corporation Securities Litigation, Civil Action No. 3:09-cv-2133-B) |
| Defendants. | § § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiffs' Amended Consolidated Class Action Complaint ("Amended Complaint") (doc. 46). On April 7, 2011, the Court granted Defendants' Motion to Dismiss the Consolidated Class Action Complaint, dismissing all claims in the original Consolidated Class Action Complaint ("Consolidated Complaint") filed August 9, 2010 without prejudice and granting leave to amend. Order Apr. 7, 2011; *see also* Hr'g Tr. Apr. 7, 2011 filed at docs. 44 ("Hr'g Tr. Part I) and 45 (Hr'g Tr. Part II). At issue here is the viability of the Amended Complaint filed May 23, 2011. Specifically, the Court must determine whether the allegations in the Amended Complaint

1

overcome the pleading deficiencies of the original Consolidated Complaint, as detailed by the Court at the hearing on April 7, 2011. For the reasons stated below, Plaintiffs' claims in the Amended Complaint are hereby **DISMISSED WITH PREJUDICE**.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

This action is a putative securities fraud class action on behalf of all purchasers of Zale Corporation securities between November 16, 2006 and October 29, 2009 (the "Class Period") against Zale Corporation and certain of Zale Corporation's officers and directors ("the Individual Defendants") (collectively "Zale") for violations of the Securities and Exchange Act of 1934 (the "Exchange Act"). Am. Compl. ¶¶ 1–2. Plaintiffs allege that, during the Class Period, Zale understated its reported expenses and overstated net income and earnings per share by failing to properly account for prepaid advertising expenses, intercompany accounts receivable, certain depository accounts, and federal income tax expenses in accordance with GAAP, or Generally Accepted Accounting Principles. *Id.* at ¶ 3. On October 29, 2009, Zale announced that its previously reported financial results for the years 2007, 2008, and 2009 contained errors, and then restated its results in order to accurately disclose its financial records. *Id.*

Plaintiffs filed their Consolidated Class Action Complaint on August 9, 2010.[1] It alleged that Zale had actual knowledge of the falsity of its original financial statements or acted in reckless

---

[1] The first case filed in this consolidated action, *Rains v. Zale Corp.*, No. 3:09-cv-2133, was filed on November 9, 2009. The second class action, *Lawyer v. Zale Corp.*, No. 3:09-cv-2218, was filed on November 19, 2009. Both actions asserted claims against Zale Corporation and certain of its officers and directors for violation of the Exchange Act, and both actions were brought on behalf of all persons who purchased or otherwise acquired the publicly traded securities of Zale Corporation between November 16, 2006 and October 29, 2009 (the "Class Period"). The cases were consolidated on June 10, 2010.

disregard of the truth or falsity of those statements, and in doing so, Zale committed acts and participated in a course of business that operated as a fraud or deceit on purchasers or acquirers of Zale's stock during the Class Period. Consol. Compl. ¶¶ 21–23. Plaintiffs attempted to establish that Zale knew of the fraud or was severely reckless in disregarding the truth by combining several "indicia" of fraud. *Id.* at ¶¶ 188–223. Specifically, Plaintiffs pointed to factors such as 1) the Individual Defendants, as executives of the company, were motivated to make as much profit as possible; 2) Zale had previously been investigated by the SEC for its accounting practices; and 3) the magnitude, nature, and pervasiveness of the restatement were so great that Zale could not have made a good faith mistake in misreporting its finances. *Id.* However, the heart of Plaintiffs' argument was centered around statements by the Individual Defendants that they were closely monitoring the company's expenses and their statements regarding the importance of advertising to Zale's business strategy. *See, e.g., id.* at ¶¶ 199–203. Given that a significant portion of the misstated financial records related to advertising expenses, and in light of the Individual Defendants' statements regarding cost control and the importance of advertising, Plaintiffs argued that the Individual Defendants either knowingly overstated, or were severely reckless in overstating, Zale's financials. *Id.* at ¶¶ 184–186.

Zale filed its Motion to Dismiss the Consolidated Class Action Complaint on October 8, 2010, and this Court held a hearing on the Motion on April 7, 2011. The Court found that while the indicia of fraudulent intent relied on by the Plaintiffs created a *plausible* inference that the Defendants were acting with scienter, it was not as compelling as any inference of non-fraudulent

3

intent.[2] Hr'g Tr. Pt. II at 67-70. Specifically, the Court found there was little indication that the Individual Defendants were aware that the financial statements were false. *Id.* at 67. It also held that, even if the Individual Defendants were closely monitoring the company's expenses, there was no nexus to demonstrate that they understood how those expenses were being accounted. *Id.* at 69. Accordingly, the Court dismissed the Consolidated Complaint without prejudice.

On June 2, 2011, Plaintiffs submitted their Amended Consolidated Class Action Complaint as well as their Synopsis Discussing the Sufficiency of the Allegations Set Forth in Plaintiffs' Amended Complaint (doc. 47) ("Plaintiffs' Synopsis"). Defendants filed their Response in Opposition to Plaintiffs' Synopsis Regarding Sufficiency of Repleading (doc. 48) ("Defendants' Response") on June 2, 2011. The majority of Plaintiffs' new allegations and the Synopsis concern a Securities and Exchange Commission ("SEC") investigation of Rebecca Higgins ("Higgins"), a former executive in the Marketing Department at Zale. *See , e.g.,* Am. Compl. at ¶¶ 6–15. On April 14, 2011, the SEC filed a Complaint (the "SEC Complaint") against Higgins alleging violations of the Exchange Act which purportedly caused Zale to misstate its finances during the Class Period. Pls.' Ex. B. 3–5.[3] Plaintiffs argue that, in light of the information contained in the SEC Complaint, Higgins acted purposefully and fraudulently to artificially inflate the price of Zale's stock, Am. Compl. at ¶¶ 212–216, and they also argue that Higgins' allegedly fraudulent actions should be

---

[2]As discussed below, *see* Section II, *infra*, the PSLRA mandates that securities fraud claims brought by private litigants must give rise to a "strong inference" of scienter, which "must be more than merely plausible or reasonable – it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights*, 551 U.S. 308, 314 (2007).

[3]The SEC settled its claims against Higgins the same day. Am. Compl. ¶ 5. Higgins paid a $25,000 fine pursuant to the settlement but did not admit or deny any of the SEC's allegations in the complaint. Pls.' Ex. A.

4

imputed on Zale Corporation and the Individual Defendants. *See generally id.*

## II.

## LEGAL STANDARDS

In analyzing a complaint under Federal Rule of Civil Procedure 12(b)(6), the Court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004). The complaint should be dismissed only if it does not include enough facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim must be "nudged . . . across the line from conceivable to plausible." *Id*. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *SW Bell Tel., LP v. City of Houston*, 529 F.3d 257, 260 (5th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555).

Special pleading rules apply to fraud claims. Pursuant to Federal Rule of Civil Procedure 9(b) ("Rule 9(b)"), "all averments of fraud . . . shall be stated with particularity." Under Fifth Circuit precedent, pleading fraud with particularity sufficient to satisfy Rule 9(b) requires the pleader to identify the "time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994) (internal citation omitted). Stated differently, Rule 9(b) requires "the who, what, when, where, and how" of the alleged fraud to be laid out in the complaint. *Benchmark Elec., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003).

5

Securities fraud claims brought by private litigants are also subject to the pleading requirements imposed by the Private Securities Litigation Reform Act of 1995 ("PSLRA"). Section 78u-4(b) of the PSLRA requires a plaintiff pleading a false or misleading statement or omission under federal securities law to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). Further, the plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* at § 78u-4(b)(2). At a minimum, the PSLRA pleading standard incorporates that of Rule 9(b). *ABC Arbitrage Pls. Group v. Tchuruk*, 291 F.3d 336, 349-50 (5th Cir. 2002); *see also Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 362-63 (5th Cir. 2004).

The PSLRA also places the additional requirement of pleading a strong inference of the defendant's state of mind (scienter) on the plaintiff. *Southland*, 365 F.3d at 363. Scienter under the PSLRA means an "'intent to deceive, manipulate, or defraud' or that 'severe recklessness' in which the 'danger of misleading buyers or sellers . . . is either known to the defendant or is so obvious that the defendant must have been aware of it.'" *Id.* at 366. Severe recklessness "is 'limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standard of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it.'" *Abrams*, 292 F.3d at 430 (citation omitted).

The facts as alleged by plaintiffs must give rise to a "strong inference" of scienter, which "must be more than merely plausible or reasonable – it must be cogent and at least as compelling as

6

any opposing inference of nonfraudulent intent." *Tellabs, Inc.*, 551 U.S. at 314. In evaluating scienter, "a court . . . must engage in a comparative evaluation; it must consider, not only inferences urged by the plaintiff . . ., but also competing inferences rationally drawn from the facts alleged." *Id.* at 314; *see also id.* at 323. Further, "the allegations should not be read in isolation, but taken together as a whole to see if they raise the necessary strong inference of scienter," considering "whether all facts and circumstances 'taken together' are sufficient to support the necessary strong inference of scienter on the part of the plaintiffs." *Abrams*, 292 F.3d at 431 (citation omitted). "Properly pleaded circumstantial evidence will suffice to withstand dismissal if the circumstantial evidence justifies a strong inference of scienter," but a court "will not strain to find inferences favorable to the plaintiffs" when construing whether scienter allegations have been sufficiently pleaded. *In re Alamosa Holdings, Inc. Sec. Litig.*, 382 F. Supp. 2d 832, 843 (N.D. Tex. 2005) (citing *Nathenson v. Zonagen, Inc.*, 267 F.3d 400, 424-25 (5th Cir. 2001); *Goldstein v. MCI WorldCom*, 340 F.3d 238, 244 (5th Cir. 2003)).

When assessing the a corporation's scienter, "it [is] appropriate to look to the state of mind of the individual corporate official or officials who make or issue the statement (or order or approve it or its making or issuance, or who furnish information or language for inclusion therein or the like) rather than generally to the collective knowledge of all the corporation's officers and employers acquired in the course of their employment." *Southland*, 365 F.3d at 366 (citation omitted).

## III.

## ANALYSIS

Defendants contend that Plaintiffs' suit should be dismissed because Plaintiffs fail to

7

adequately plead scienter with regards to Higgins, and therefore scienter cannot be imputed onto Zale and the Individual Defendants.[4] The Court agrees.

When determining whether a corporation's scienter can be drawn from an executive's false statements it is "appropriate to look to the state of mind of the individual corporate official or officials who make or issue the statement (or order or approve it or its making or issuance, or who furnish information or language for inclusion therein, or the like) . . . ." *Southland*, 365 F.3d at 366. Thus a corporation only has the requisite scienter if the individual executive making the statement had that level of scienter. *Id.* Therefore, in order to determine if Zale had the requisite scienter to commit fraud, it is first necessary to examine whether the inference of Higgins' scienter is strong enough to meet the pleading standards under the PSLRA. The Court then turns its analysis to whether Higgins' scienter can be imputed onto Zale and then to the liability of the Individual Defendants.

A. *Higgins' Scienter*

Defendants argue that Plaintiffs fail to adequately plead Higgins' scienter.[5] Defs.' Resp. 2. Plaintiffs' argument is principally based around the SEC Complaint's statement "Higgins knew or should have known that Zale's prepaid advertising balance was overstated and that Zale recorded certain advertising expenses in the incorrect periods." *See* Am. Compl. ¶ 212; *see also* Pls.' Ex. B. at

---

[4]Defendants also argue that even if Higgins' scienter was adequately pleaded, there is no nexus between Higgins' allegedly fraudulent actions and Zale's financial statements, and there are no facts which show that the Individual Defendants were aware of Higgins' fraud. Defs.' Resp. 3–5. Because the Court finds that the Amended Complaint does not adequately plead Higgins' scienter, it does not reach Defendants' alternate grounds for dismissal.

[5]Defendants also argue that Higgins is not an executive officer as defined by the Exchange Act. Defs.' Resp. 1 n.1.

5. Plaintiffs claim Higgins was acting on behalf of Zale by purposefully falsifying financial figures in order to allow Zale to overstate its income. Synopsis 3. Defendants respond that there are no facts which demonstrate Higgins was acting with a corporate goal; she may have acted with a personal motive, and she may have been unaware of the effect of her actions on Zale's financial statements. Defs.' Resp. 3.

To determine whether or not Higgins intended to commit fraud, the Court "must engage in a comparative evaluation; it must consider, not only inferences urged by the plaintiff . . ., but also competing inferences rationally drawn from the facts alleged." *Tellabs*, 551 U.S. at 314. The SEC Complaint alleges Higgins withheld advertising invoices and signed inaccurate financial certifications. Pls.' Ex. B. 4–5. However, the SEC Complaint only alleges Higgins' motive for her actions in one instance: "Higgins instructed her employees to withhold approximately $257,000 worth of invoices . . . *to avoid exceeding her department's budget.*" *Id.* at 4 (emphasis added). Thus, there is some indication that Higgins was acting under a personal motivation to appear as a competent executive rather than under the motivation to allow Zale to commit fraud. Plaintiffs do not attribute any motive to Higgins, but assert "the SEC did not allege Higgins personally profited from her wrongdoing or was influenced by some unique motivation." *See* Am. Compl. ¶ 9.

The absence of a motive allegation is not fatal to a plaintiff's claim. *Tellabs*, 551 U.S. at 325. Nonetheless, here, Plaintiffs do not claim that Higgins had anything to gain from the alleged fraud, and the Court finds nothing in the Amended Complaint to suggest she did. While an inference of her scienter is plausible, it is not the most compelling inference available. *See Tellabs, Inc.*, 551 U.S. at 314 (holding any inference of scienter must be at least as compelling as any opposing inference of nonfraudulent intent). Rather, the more compelling inference is that Higgins was acting under

the motivation to make the Marketing Department appear to be efficient, organized, and well-managed, and not that she intended to initiate company-wide fraud. This is especially true considering Plaintiffs' claim that Zale was heavily scrutinizing its advertising and expenses during the Class Period, likely putting a great deal of pressure on Higgins. *See* Am. Compl. ¶¶ 11–15.

Moreover, there are few facts alleged which suggest Higgins was even aware her actions could potentially lead to fraudulent financial statements on behalf of the entire company. The level of severe recklessness required to meet scienter is "'limited to those highly unreasonable omissions or misrepresentations . . . that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it.'" *Abrams v. Baker Hughes Inc.*, 292 F.3d 424, 430 (5th Cir. 2002) (quoting *Broad v. Rockwall*, 642 F.2d 929, 961 (5th Cir. 1981) (en banc) (citation omitted)). There are simply not enough facts to say that Higgins was obviously aware her inaccurate accounting could or would eventually result in Zale releasing misleading financial statements with material errors. Higgins is not an accountant; she is a Marketing Executive who was initially hired as an Administrative Assistant. Am. Compl. ¶ 7. Given that her background does not suggest an intimate awareness of a large corporation's accounting procedures, the most that may be inferred on her part is an awareness that inaccurate reporting on her end may lead to inaccurate reporting down the line. However, this does not imply Higgins knew what she was doing could result in fraud, and ordinary negligence or even gross negligence are not enough to establish scienter. *See Southland*, 365 F.3d at 366 (holding scienter requires intent to deceive or severe recklessness). Thus, the Court finds that the most compelling inference raised by the Amended Complaint is that Higgins neither intended to commit fraud nor was aware her actions could lead to material errors in Zale's financial statements.

The fact that the SEC chose to only charge Higgins with violations of Section 13 of the Exchange Act instead of fraud under Section 10 is consistent with this inference.[6] *See* Pls.' Ex. B. 1. The PSLRA is designed to limit *private* actions, *see Tellabs*, 531 U.S. at 320, and does not bind the SEC, such that the "strong inference" of scienter required by the PSLRA does not apply to SEC fraud actions. *See SEC v. Berry*, 580 F. Supp. 2d 911, 920 (N.D. Cal. 2008). Thus, if the SEC chose to prosecute Higgins with fraud, it would not be constrained by the PLSRA's stricter pleading requirements in alleging her mental state. *See id.* Despite that, the SEC chose to only pursue Section 13 claims against Higgins, alleging that she aided and abetted non-fraud books and record-keeping violations of the Exchange Act. Pls.' Ex. B. 1; *see also SEC. v. McNulty*, 137 F.3d 732, 741 (2d Cir. 1998) (Section 13 violations do not require establishment of defendants' scienter); *SEC v. Hilsenrath*, 2008 WL 2225709, at *7 (N.D. Cal. May 29, 2008) (same). Thus even under its lower standard of proof, the SEC opted to pursue claims with a lower pleading standard. Indeed, at least one court has stated the "SEC's decision not to plead scienter hurts plaintiffs' ability to plead a strong inference of scienter." *In re Verifone Holdings, Inc. Sec. Litig.*, 2011 WL 1045120, at *9 (N.D. Cal. Mar. 22, 2011).[7]

---

[6]Additionally, there is no indication that the SEC has filed or intends to file suit against Zale Corporation or any of the Individual Defendants in connection with Higgins' actions or the restatement at issue in this case. *See* Defs.' Resp. App. 323 (Zale April 15, 2011 Form 8-K stating that SEC staff notified Zale on April 14, 2011 that investigation regarding restatement was complete and indicated that it did not intend to recommend any enforcement action).

[7]In *Verifone Holdings*, private litigants brought suit against Verifone for allegedly fraudulently overstating its income. 2011 WL 1045120, at *1. The overstatement was primarily caused by Paul Periolat, an accountant employed at Verifone. *Id.* Prior to the private suit, the SEC filed suit against Periolat but did not charge him with conduct requiring scienter as an element of the violation. *See id.* at *1, *9. The court determined the SEC believed it could not establish that Periolat acted with scienter, and it ultimately took the SEC's beliefs into account in finding that Periolat's behavior was best explained by an inference of nonfraudulent intent. *Id.*

Overall, the Court finds that Plaintiffs' allegations regarding Higgins' conduct do not give rise to the strong inference of scienter required under the PSLRA. *See Tellabs, Inc.*, 551 U.S. at 314. There is a substantial likelihood that Higgins was personally motivated to misstate her department's finances to make her department appear within its budget rather than to help Zale create inaccurate financial statements to defraud investors, and it is unlikely Higgins understood the greater effect of her department's financial reports on Zale's financial reports. Moreover, the fact that the SEC declined to charge Higgins with fraud supports an inference of nonfraudulent intent. Overall, the Court finds that the Amended Complaints' inference of Higgins' scienter is not as compelling as any inferences of non-fraudulent intent.

B.      *Zale's Scienter*

Given that the Court finds that the Amended Complaint does not allege Higgins' scienter under the PSLRA, the Court also finds that the complaint does not allege Zale's scienter. When determining whether a corporation's scienter can be drawn from an executive's false statements it is "appropriate to look to the state of mind of the individual corporate official or officials who make or issue the statement (or order or approve it or its making or issuance, or who furnish information or language for inclusion therein, or the like) . . . ." *Southland*, 365 F.3d at 366. Thus a corporation only has the requisite scienter if the individual executive making the statement had that level of scienter. *Id.* As discussed above, the Court finds that Plaintiffs fail to adequately allege a strong inference of scienter with regards to Higgins, and therefore there is no strong inference of scienter

to impute onto Zale.[8] Because Zale's scienter has not been adequately pleaded, the Court **DISMISSES** Count I against Defendant Zale Corporation.

C.  *Liability of the Individual Defendants*

Plaintiffs seek to establish liability on the Individual Defendants through Section 20 of the Exchange Act. Am. Compl. ¶¶ 246–249. Defendants respond that Section 20 control person liability is inapplicable because the Individual Defendants were unaware of Higgins' conduct and did not induce her to engage in any fraudulent behavior. Defs.' Resp. 5. Section 20(a) of the Exchange Act imposes joint and several liability on "[e]very person who, directly or indirectly, controls any person liable under any provision of this title or of any rule or regulation thereunder" for securities fraud. 15 U.S.C. § 78t(a). Because this Court finds that both Zale and Higgins lack the required scienter to be liable under the Exchange Act, Section 20 liability is inapplicable. *See Southland*, 365 F.3d at 383 ("Control person liability is secondary only and cannot exist in the absence of a primary violation."). Because Section 20 is inapplicable, there is no basis of liability for the Individual Defendants. Accordingly, the Court **DISMISSES** Count II against the Individual Defendants.

IV.

**CONCLUSION**

For foregoing reasons, the Court finds that Plaintiffs' Amended Consolidated Class Action Complaint does not remedy the deficiencies identified by the Court at the hearing held April 7, 2011

---

[8]The Court also finds that the Amended Complaint fails to allege Zale's scienter to the extent it alleges the company's scienter based on the Individual Defendants' scienter. The Court previously found that the "indicia" of fraudulent intent in the original Consolidated Complaint did not raise an inference of the Individual Defendants' fraudulent intent that was at least as compelling as the inference of non-fraudulent intent. The addition of allegations regarding Higgins and the SEC complaint against her does not change this analysis. Viewing the allegations as a whole, the Court finds that the Amended Complaint does not give rise to a strong inference of the Individual Defendants' scienter.

and does not plead a strong inference of scienter. Accordingly, Plaintiffs' claims are hereby **DISMISSED**.

Normally the Court will allow a plaintiff the opportunity to amend where it appears that more careful or detailed drafting might overcome the deficiencies on which dismissal is based. *See McClellon v. Lone Star Gas Co.*, 66 F.3d 98, 103 (5th Cir.1995); *see also Hitt v. City of Pasadena*, 561 F.2d 606, 608-09 (5th Cir. 1977) (observing that a complaint should only be dismissed under Rule 12(b)(6) "after affording every opportunity for the plaintiff to state a claim upon which relief can be granted"). In this case, Plaintiffs have now had multiple opportunities to state a claim, including their Amended Consolidated Class Action Complaint, filed after the Court's ruling at the April 7, 2011 hearing detailing the deficiencies in the pleadings. Under these circumstances, the Court determines that allowing further amendment will be futile and cause needless delay. Accordingly, in its discretion, the Court determines that further amendment of the pleadings is not warranted and all of Plaintiffs' claims against the Defendants are therefore **DISMISSED WITH PREJUDICE**.

**SO ORDERED.**

**SIGNED: August 1, 2011.**

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE